IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-81646 |
| | ) | |
| LAURENCE CRAIG JONES and | ) | CH. 13 |
| ELLEN WOOD JONES, | ) | |
| | ) | |
| Debtors. | ) | |

**MEMORANDUM**

Hearing was held in Omaha, Nebraska, on December 10, 2007, on Debtors' Chapter 13 Plan (Fil. #5), an Objection to Confirmation of Plan filed by the Chapter 13 Trustee (Fil. #13), and a Response to Trustee's Objection filed by Debtors (Fil. #14). Charles B. Garman appeared for Debtors, and Tom Kenney appeared on behalf of the Chapter 13 Trustee. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L).

*Background*

The Chapter 13 Trustee objected to Debtors plan on several grounds. However, prior to the hearing, the Trustee withdrew some of the objections. The remaining objections can be summarized as follows:

◄ Debtors' amended Official Form 22C (the "means test") (Fil. #24) understates Debtors' income because it fails to include in the calculation of current monthly income certain relocation expense reimbursements received by Debtor Laurence Jones.

◄ Debtors' housing expenses are excessive and are not reasonably required for the maintenance or support of Debtors.

◄ Debtors have understated the value of their home and, therefore, the plan may not satisfy the best interest of creditors test.

◄ Debtors acquired their "expensive" home within a year prior to bankruptcy filing and at a time when Debtors knew they were having financial difficulties. Accordingly, the bankruptcy case and plan were not filed in good faith.

The underlying facts are as follows:

1. Debtors' income exceeds the median income for a family of two in the locality of Debtors. Therefore, Debtors are "above-median" debtors for purposes of the disposable income calculations set forth in 11 U.S.C. § 1325(b).

  2. Debtor Laurence Jones is employed at Union Pacific Railroad. Due to medical limitations, Debtor Ellen Jones does not work outside the home.

  3. The pay stubs used for calculating current monthly income reveal that in addition to his salary Laurence Jones was paid $5,589.33 for reimbursement of "relocations expenses" during the six-month period used for calculating his current monthly income.

  4. In December 2006, Debtors purchased a condominium in downtown Omaha for $299,000.00. On August 21, 2007, they valued that same condominium in their bankruptcy schedules at its tax-assessed value of $272,500.00.

  5. Debtors assert that their move from a house to a condominium in December 2006 was for purposes of reducing expenses, such as eliminating the need for two motor vehicles. At the time of filing, Debtors owned only one motor vehicle, which was unencumbered.

  6. According to the amended means test form submitted by Debtors (Fil. #24), they have no projected disposable income.

  7. Debtors do not list any priority debt in their schedules. They list general unsecured debt of approximately $139,000.00, almost all of which appears to be credit card debt.

  8. The plan proposed by Debtors calls for a plan payment of $200.00 per month for 60 months. There are no mortgage arrearages or other secured claims to be paid through the plan. After payment of administrative expenses, the plan will return $8,000.00-$9,000.00 (approximately 6%) to unsecured creditors.

### *Discussion*

The Trustee's objections will be addressed in order.

a. <u>Inclusion of Relocation Expenses in Current Monthly Income</u>.

Debtors received reimbursement for relocation expenses in the amount of $5,589.33 during the six-month period prior to bankruptcy filing. Thus, Debtors' current monthly income included an extra $931.56 ($5,589.33 divided by six months). Debtors assert that such amounts are not income at all, but simply reimbursement for certain expenses they incurred for relocating to the State of Nebraska. Debtors further state that if such amounts are required to be included in current monthly income, then Debtors should be able to offset an identical amount of actual expenses. The Trustee asserts that the definition of "current monthly income" is quite clear – "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period . . . ." 11 U.S.C. § 101(10A)(A). The Trustee notes that Debtors had to pay tax on the expense reimbursement as ordinary income. The Trustee compares the expense reimbursement to a situation where a debtor receives a bonus during the six-month current monthly income calculation period.

I disagree. This was not a "bonus." It was strictly a reimbursement of expenses and is directly related to the actual out-of-pocket expenses incurred by Debtors. Also, it was a one-time occurrence. That is, Debtors were reimbursed for their expenses related to their move to Nebraska and will not again be reimbursed for that move. Such a reimbursement is quite different than a periodic bonus that a debtor may earn.

Further, even if the Trustee is correct that the expense reimbursement should technically be included in light of the broad definition of current monthly income, I agree with Debtors that the special circumstances exception of § 707(b)(2)(B) should apply and that they should be entitled to offset their moving expenses against the reimbursement. In any event, since I have determined that reimbursement of moving expenses should not count as income where it is a direct reimbursement of out-of-pocket costs, this portion of the Trustee's objection to confirmation is overruled.

b.      Housing Expenses.

The Trustee's position is that Debtors moved into a "luxury" condo in December 2006, at a time when they were fully aware of their financial difficulties. The payments on their two mortgages and their association dues exceed $2,400.00 per month. The Trustee believes that Debtors could secure adequate housing for a much lower monthly housing expense.

As indicated previously, these Debtors are so-called "above-median" debtors for purposes of 11 U.S.C. § 1325(b)(3). That section states that "amounts reasonably necessary to be expended . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . . ." The Judicial Conference of the United States promulgated Official Form 22C to enable debtors to provide the information necessary to calculate whether the debtor's income is above or below the median and, if above, to calculate the deductions allowed by § 707(b)(2) and for calculation of monthly disposable income under § 1325(b)(2) and (3). Under the form, the debtor's monthly expenses are certain monthly expense amounts specified under the National Standards and Local Standards and the debtor's actual monthly expenses for categories specified as "Other Necessary Expenses" issued by the Internal Revenue Service for the area in which the debtor resides.

Specifically, the form allows the deduction of the debtor's average monthly payments on account of secured debts as specified in 11 U.S.C. § 707(b)(2)(A)(iv). Congress apparently made the decision to allow the deduction of secured debt obligations without regard to whether such expenses are actually reasonable or necessary. There is no dispute that Debtors properly calculated their "reasonably necessary" expenses as mandated by § 1325(b)(3). Accordingly, the Trustee's argument that Debtors' housing expenses are not reasonably necessary must fail.

c.      Best Interest of Creditors Test.

The Trustee also argues that this plan fails to meet the best interest of creditors test of § 1325(a)(4). That section requires Debtors to establish that the plan will distribute to unsecured creditors at least as much as they would receive in a Chapter 7 liquidation. Specifically, the Trustee takes issue with the $272,500.00 value that Debtors have assigned to the condo in their schedules.

The creditor holding both the first and second mortgages has not yet filed its proof of claim, but Debtors have scheduled the amount of the first and second mortgages as approximately $267,707.00. At the time Debtors filed this proceeding (August 21, 2007), the applicable homestead exemption in Nebraska was $12,500.00. Therefore, Debtors assert that there is no nonexempt equity in their condo.

The Trustee submitted records from the Douglas County Assessor's office showing that Debtors purchased the condo on December 28, 2006, for a purchase price of $299,000.00. Those records also show that the seller from whom Debtors purchased the property acquired it only two months earlier (in October 2006) for the sum of $263,520.00. The Trustee's evidence also showed the tax-assessed valuation is $272,500.00 and that other units in Debtors' building having assessed values of $271,200.00 and $338,700.00.

Unfortunately, no other evidence of value was presented. Debtors have scheduled the value of the condo at the tax-assessed value, which is somewhat below their purchase price of $299,000.00. Debtors' attorney argued that the reduction in value is based on the continued downturn in the housing market and particularly the condo market. I agree with the Trustee that the tax-assessed value is not necessarily determinative of the market value of the property. However, Debtors did have a reasonable basis for using that lower value instead of their original purchase price. Since there is no evidence to contradict Debtors' estimate of value as set forth in their schedules, the Trustee's argument must fail.

d.  Good Faith.

The Trustee asserts that the plan was not submitted in good faith as required by § 1325(a)(3). According to the Trustee, Debtors bought the condo recently and at a time when they were aware that they were having financial difficulties. According to the Trustee, if Debtors were really trying to work out their financial difficulties, they would have purchased a much less expensive home.

In response, Debtors submitted an affidavit that they purchased the condo in an attempt to reduce expenses. They moved from a house to the condo, which is located close to the place of employment for Debtor Laurence Jones. By moving closer to his place of employment, Debtors were able to eliminate the need for one of their two vehicles.

This Court previously addressed Eighth Circuit law regarding the good faith standard in connection with the ability to pay under a plan in *In re Nelson*, Case No. BK07-80007 (Bankr. D. Neb. Apr. 18, 2007), where this Court stated:

> Among other requirements for confirmation of a Chapter 13 plan, the Bankruptcy Code at 11 U.S.C. § 1325(a)(3) provides that the plan must be proposed in good faith and not by any means forbidden by law. The Bankruptcy Code does not define the phrase "good faith." The Eighth Circuit Court of Appeals has described the good faith inquiry as focusing on "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent

misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987). In *Zellner,* the Eighth Circuit determined that the "ability to pay" criteria were subsumed in 11 U.S.C. § 1325(b). *Id.* Subsequently, the Eighth Circuit determined that *Zellner* also preserved a traditional "totality of circumstances" approach in determining whether a plan is proposed in good faith and factors should be considered such as the type of debt sought to be discharged, whether the debt is nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief. *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1349 (8th Cir. 1990). Except for the objection to certain expenses, none of Kellogg's objections pertain to the factors to be considered for good faith purposes. Instead, its objections seem to relate more to ability-to-pay factors which, according to the Eighth Circuit, are subsumed in § 1325(b), and not in the good faith standard.

Thus, the ultimate question is whether there were any circumstances to indicate a lack of good faith on the part of Debtors. The Trustee points to the timing of Debtors' purchase of the condo as an indication of a lack of good faith. In response, Debtors point out that they purchased the condo in an attempt to actually reduce expenses. Unfortunately, neither party presented any evidence as to Debtors' housing expenses prior to December 2006. Debtors indicated that they lived in a house prior to that time, but there is no indication as to the value of that house nor the size of the mortgage liens against it.

The record indicates that the condo purchase allowed Debtors to reduce expenses by eliminating their need for a second vehicle. The Trustee has not presented any contrary evidence. Thus, I have no reason to question the good faith of Debtors simply because the condo was purchased within a year prior to bankruptcy filing. There is nothing in the record that calls into question Debtors' "motivation and sincerity in seeking Chapter 13 relief." The Trustee's good faith objection is overruled.

### *Conclusion*

As discussed above, the Trustee's objections to confirmation are overruled. Debtors' Chapter 13 plan will be confirmed by separate order.

DATED: December 14, 2007.

BY THE COURT:

/s Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:
    Charles B. Garman/Francis X. Skrupa
    Tom Kenny/Kathleen Laughlin
    U.S. Trustee

Movant(*) is responsible for giving notice to other parties if required by rule or statute.